IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 4:22CR00261 DPM |
| | ) | |
| JOHN HENSON | ) | DEFENDANT |
| TIPPANNEE WALLER HENSON | ) | CLAIMANT |

**UNITED STATES OF AMERICA'S SECOND SUPPLEMENTAL BRIEF**

The United States of America, by and through its attorney Jonathan D. Ross, United States Attorney for the Eastern District of Arkansas, and Amanda Jegley, Assistant United States Attorney for said district, submits the following second supplemental brief.

I. PROCEDURAL BACKGROUND

On July 17, 2024, Defendant John Henson entered a guilty plea to possession with intent to distribute marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D). (ECF No. 28). As part of his plea agreement, Henson stipulated that the quantity of marijuana involved in the offense is at least 20 kilograms, but less than 40 kilograms, and that he maintained a premises for the purpose of manufacturing or distributing a controlled substance. (Id. at ¶¶5 A and C). In his plea agreement, Henson stipulated that the following facts are true:

> On May 12, 2022, DEA agents in Fairview Heights, Illinois, contacted DEA Little Rock regarding a traffic stop of a tractor/trailer, which resulted in the seizure of approximately 50 pounds of marijuana and $504,969.00. The driver arrested in Illinois cooperated with DEA agents and he advised he was on his way to deliver 35 pounds of marijuana to and pick up money from 102 Cambridge Cove in Jacksonville, Arkansas, at the direction of his source of supply in California. Agents conducted database checks on the residence at 102 Cambridge Cove in Jacksonville, and it showed to be owned by John Henson. Agents on surveillance at that address observed a black Dodge SUV in the driveway at the residence. The license plate returned to John Henson. The cooperator called Henson and asked Henson to meet him at the Super 8 motel at 1850 John Harden Drive in Jacksonville. Agents watched Henson leave his residence on Cambridge Cove and drive to the Super 8 to meet with the cooperator. Henson grabbed the suitcase of marijuana from

> the cooperator's trailer and put it in his SUV. Henson then handed the cooperator a cereal box. After the exchange, Henson was arrested. Inside the cereal box was a vacuum-sealed bag containing $34,000. Henson gave agents consent to search his residence on Cambridge Cove. When asked if there was anything illegal in the residence, Henson said there "might be a little bit of money and marijuana" in the house. While searching the residence, agents found a Romarm/Cugir (Century Arms, Inc.), model Mini Draco, 7.62x39mm caliber pistol, bearing serial number PMD-10907-19 in the master bedroom, as well as approximately 40 pounds of marijuana and $583,760.00 in United States currency. In a secondary bedroom, agents found large boxes of marijuana and an HS Produkt (IM Metal), model XDS 4, .45 caliber pistol bearing serial number S3196620 inside a closet. Henson told agents that the guns and drugs belonged to him. The seized substances were confirmed by the DEA lab to be marijuana. The amounts seized were suitable for distribution.

(ECF No. 28, ¶5H). Additionally, as part of his plea agreement, Henson agreed to the forfeiture of "seized cash drug proceeds in the amounts of $383,760 and $34,000," and the parties agreed to litigate the remaining $200,000 cash seized as part of sentencing. (ECF No. 28, ¶5E and ¶12).

After Henson entered his guilty plea, Henson's now ex-wife, Tippanee Waller, filed a "Response to a Notice of Judicial Forfeiture Action," in which she has claimed the U.S. Currency came from marital funds and that it was not drug money. (ECF No. 33, p. 1). Waller attached to her response two claim forms submitted to the DEA asserting that she and Henson "did not use banks to deposit [their] money" and kept their money in their house. (ECF No. 33, pp. 7, 13). Further, Waller asserted that when she and Henson separated in 2018, approximately 4 years before the offense conduct, Henson took all of the U.S. currency without telling her. (*Id.*).

Henson subsequently moved for the return of $200,000 in cash, arguing that it should be returned because it would violate the Excessive Fines Clause of the Eighth Amendment for the Government to forfeit the remaining $200,000. (ECF No. 45). The United States responded, arguing that the remaining $200,000 at issue are drug proceeds and that the Excessive Fines Clause does not apply. (ECF No. 46). Additional briefing was submitted, including a Supplemental Brief filed by the United States that set out the prior testimony of the Defendant and Claimant and some

of the arguments the Government intended to make; (ECF No. 58), a response by Waller (ECF No. 59), and a Reply by the United States (ECF No. 60). Subsequently, Waller filed a Trial Brief (ECF No. 61), to which the United States responded in the form of a Surreply. (ECF No. 62).

On November 12, 2025, a combined sentencing/ancillary hearing was held and ultimately cancelled because Henson could not produce a sample for drug testing prior to the hearing. Additionally, arguments were held concerning the "architecture" of the hearing and the permissible extent of potential testimony by John Henson concerning the U.S. Currency. Currently, all motions and briefs filed are pending. The United States renews and incorporates all pleadings by reference in this brief. The Court ordered the parties to file a joint report on all agreed upon matters and to submit simultaneous briefs by December 19, 2025.

## II. THE "ARCHITECTURE" OF THE HEARING

### A. SENTENCING

#### a. John Henson's sentencing should be conducted first.

The extent of Henson's forfeiture should be decided during his sentencing hearing. A criminal forfeiture is against a criminal defendant. *See United States v. Leyva*, 916 F.3d 14, 29 (D.C. Cir. 2019) (explaining that criminal forfeiture is a part of sentencing) (citing *Libretti v. United States*, 516 U.S. 29, 39 (1995)). The litigation with the defendant starts with the indictment and ends with the preliminary order and sentencing. Fed. R. Crim. P. 32.2(a) and (b). On July 19, 2024, the Court entered a preliminary order of forfeiture pursuant to Rule 32.2(2)(A) of the Federal Rules of Criminal Procedure. In the preliminary order, Henson was ordered to forfeit all property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result

of a violation of 21 U.S.C. § 841(a)(1). (ECF No. 32). The property includes $34,000 seized during a controlled delivery and $383,760.00 seized at Henson's residence. [1]

The Court has determined, based on the evidence in the record, that the property is subject to forfeiture pursuant to 21 U.S.C. § 853. However, because of the carve-out of $200,000 in the plea agreement and the pending motion of John Henson, there remains a dispute about the extent of the forfeiture in this case. (ECF No. 28) (noting that the Government and Henson have not agreed whether those funds are subject to forfeiture). The Government seeks to resolve the dispute regarding the $200,000 at sentencing.

An order of forfeiture must be entered at or before sentencing. Fed. R. Crim. P. 32.2(b)(2)(B). If the extent of the forfeiture is in question, Federal Rule of Criminal Procedure 32.2(b)(2)(C) empowers the Court to enter a generic order until additional specific property is identified, or the amount of the money judgment has been calculated.

> **General Order.** If, before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the total amount of the money judgment, the court may enter a forfeiture order that:
> **(i)** lists any identified property;
> **(ii)** describes other property in general terms; and
> **(iii)** states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated.

*Id; United States v. Petters*, No. CIV. 08-5348 ADM/JSM, 2011 WL 589746, at *3 (D. Minn. Feb. 10, 2011). Here, the forfeitable property has been identified. Thus, the United States submits that the forfeitability of the remaining $200,000 is ripe for adjudication at the time of sentencing.

[1] The original plea agreement contained an error in that it separately addressed the $34,000 seized during the controlled delivery from the $383,760.00 U.S. Currency that Henson agreed to forfeit. The total amount seized was $583,760.00. The United States and Henson agreed to litigate the forfeitability of $200,000. The United States submits that the $34,000 seized during the controlled delivery is included in the $383,760 in U.S. Currency that Henson has agreed to forfeit.

**b. In the sentencing hearing, the United States has the burden of proving that the remaining $200,000 in U.S. Currency is proceeds and shall present its proof first at the sentencing hearing.**

The government must prove forfeiture by a preponderance of the evidence. *United States v. Beltramea*, 849 F.3d 753, 757 (8th Cir. 2017). During the preliminary order phrase, the government bears the burden of proof in establishing "the requisite nexus between the property and the offense." Fed.R.Crim.P. 32.2(b)(1)(A). John Henson has already conceded under oath and in his plea agreement that $383,760 in U.S. Currency is drug proceeds, and that is sufficient to meet the Government's burden of proof as to that amount. *United States v. Ochoa Meza*, No. 24-50090, 2024 WL 5001477 (5th Cir. Dec. 6, 2024) (district court did not err by concluding that defendant's residence is subject to criminal forfeiture under § 853(a)(2) because there was a sufficient nexus between his conviction for conspiracy to possess with intent to distribute cocaine and his admission that residence was used to facilitate drug activity, including drugs being delivered to and stored in his home and meeting with leader of the DTO multiple times). Therefore, at sentencing, the United States has the burden of proving by a preponderance of the evidence that the remaining $200,000 in U.S. Currency is proceeds or facilitated a drug trafficking crime. As outlined in the Government's first supplemental brief, there is ample evidence supporting such a finding. (ECF No. 28).

**c. In the sentencing hearing, John Henson is permitted by his plea agreement to litigate the forfeitability of $200,000 in U.S. Currency, however, he cannot contest the $383,760.00 in U.S. Currency he has admitted are proceeds.**

In Paragraph 5F of the plea agreement, "the defendant agrees to the forfeiture of seized cash drug proceeds in the amounts of $383,760" and the parties agreed to litigate the forfeiture of $200,000 cash at the time of sentencing. (ECF No. 28). Additionally, the defendant agreed in

Paragraph 12F to forfeit all interests in $383,760.00 in United States currency seized at the defendant's residence. Here, the defendant lacks standing to seek the return of any portion of $383,760.00 in U.S. Currency because he knowingly and voluntarily abandoned any interest in that property by executing the plea agreement. *See United States v. Spencer*, Criminal No. 22-10241-FDS, 2023 WL 8006341, at *2–3 (D. Mass. Nov. 17, 2023) (denying defendant's motion for return of property under Rule 41(g) because "the plain terms of the plea agreement preclude him from asserting a possessory interest" in the property); *id.* at *2 ("At least five circuit courts have addressed whether a binding plea agreement can vitiate a defendant's possessory interest in reclaiming seized property. All determined that—absent evidence that the agreement is invalid—it does."); *see also Bastian v. United States*, No. 8:17CV309, 2019 WL 1040983, at *5 (D. Neb. Mar. 5, 2019) (examining plea agreement language virtually identical to that of the plea agreement here and concluding that the criminal defendant, who initialed every paragraph, "waived any claims he might have regarding the property seized by law enforcement").

**d. In the sentencing hearing, the Federal Rules of Evidence do not apply.**

To the extent the forfeiture relates to the defendant, it is a part of sentencing, therefore, hearsay is admissible in determining what is subject to forfeiture. *U.S. v. Sheridan*, 859 F.3d 579, 583 (8th Cir. 2017) ("In resolving disputed issues of fact during a criminal sentencing, a district court is permitted to rely on relevant hearsay or other evidence 'without regard to its admissibility under the rules of evidence applicable at trial,' so long as that evidence possesses 'sufficient indicia of reliability to support its probable accuracy.' U.S.S.G. § 6A1.3(a)."); *United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010) (because forfeiture is part of sentencing, less stringent evidentiary standards apply in the forfeiture phase of the trial; evidence need only be "reliable").

B. THE ANCILLARY PROCEEDING

**a. In the ancillary proceeding, Tippannee Waller Henson shall present proof first because the burden shifts to Tippannee Waller Henson to establish her third-party claim by a preponderance of the evidence.**

The ancillary proceeding is not a part of sentencing. Fed.R.Crim.P. 32.2(c)(4). During an ancillary proceeding, the burden shifts to the petitioner to establish the petitioner's third-party claim by a preponderance of the evidence. 21 U.S.C. § 853(n)(6); *see also United States v. Mills*, 18 F.4th 573, 576 (8th Cir. 2021). “Congress chose to place the burden of proof on the third-party during the ancillary proceeding, since the government would necessarily have carried its burden of proving that the defendant's interest in the property was subject to forfeiture during the criminal trial.” *United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001), *superseded on other grounds as recognized in United States v. Marion*, 562 F.3d 1330 (11th Cir. 2009). Therefore, for purposes of the ancillary proceeding, Tippannee Waller Henson has the burden of proof to establish her claim by a preponderance of the evidence. *Mills*, 18 F.4th at 576.

**b. The Rules of Evidence apply to ancillary proceedings.**

As opposed to the evidentiary standard applicable to sentencing hearings, the Federal Rules of Evidence apply during an ancillary proceeding. *United States v. Morales*, 36 F. Supp. 3d 1276, 1285 (M.D. Fla. 2014) (“Ancillary forfeiture proceedings arise in the context of a criminal proceeding, but they are civil in nature. Accordingly, the Federal Rules of Evidence apply in ancillary proceedings”). Pursuant to 21 U.S.C. § 853(n)(5), at the hearing, the petitioner may testify and present evidence and witnesses on his or her own behalf and cross-examine witnesses who appear at the hearing. The United States may present evidence and witnesses in rebuttal and in defense of its claim to the property and cross-examine witnesses who appear at the hearing. In

addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture. *Id.*

**c. The Court can rely upon findings it made at sentencing in the ancillary proceeding.**

The district court can consider the record from the criminal case in the ancillary proceeding. 21 U.S.C. § 853(n)(5). In the ancillary proceeding, "the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture." 21 U.S.C. § 853(n)(5). The third-party petitioner, however, cannot complain about the nature of the proof offered against the criminal defendant. *See, e.g., United States v. Coffman*, 612 Fed. Appx. 278, 283-84 (6th Cir. 2015).

**d. John Henson will violate his plea agreement if he contests the forfeiture of $383,760.00 or assists anyone else in contesting the forfeiture of $383,760.00.**

The plea agreement is binding upon John Henson. *United States v. Guzman*, 707 F.3d 938, 941 (8th Cir. 2013) (The Eighth Circuit "generally interpret[s] the meaning of the terms in the [plea] agreement according to basic principles of contract law."). In paragraph 12C of John Henson's plea agreement, it states that he agrees not to assist any other individual in contesting the forfeiture of $383,760.00 and other items and agrees that there was reasonable cause to seize those items. Because of this provision, Henson would be in violation of his plea agreement if he testifies or otherwise assists Tippannee Waller Henson in contesting the forfeiture of those items in either his sentencing or in the ancillary proceeding. However, in paragraph 5 F of Henson's plea agreement, the United States and Henson agreed that the forfeiture of $200,000 in United States Currency could be litigated at sentencing. Because of this carve-out provision, Henson may testify concerning $200,000 of U.S. Currency, provided he does not contest or assist anyone else in contesting the forfeiture of $383,760.00.

## III. CONCLUSION

For these reasons, John Henson should be sentenced first, with the government carrying the burden of proving forfeitability. The ancillary proceeding should come second, with Tippannee Waller carrying the burden of proving her prior, legal interest in any property the court preliminarily determines to be subject to forfeiture and she must make her case using evidence that is admissible under the Federal Rules of Evidence. In the sentencing hearing, John Henson is permitted by his plea agreement to litigate the forfeitability of $200,000 in U.S. Currency, however, but he cannot contest the $383,760.00 in U.S. Currency he has admitted are proceeds or assist anyone else in contesting the forfeiture of $383,760.00. Finally, the United States submits that the record, when considered as a whole, supports a finding that all of the money seized from Henson was drug proceeds and property that facilitated drug trafficking.

JONATHAN D. ROSS
United States Attorney

AMANDA JEGLEY (2010045)
Assistant U.S. Attorney
425 W. Capitol Ave., Ste. 500
(501)340-2600
Amanda.jegley@usdoj.gov